Alright, the first case we'll hear is United States v. Flores-Duran and Mr. Hossman. Good morning, Your Honors. Good morning. May it please the Court, Jeffrey Hossman on behalf of Genaro Flores-Duran. In this particular case, Mr. Flores-Duran was arrested in August of 2010 in Jasper County, South Carolina. The charges that arose in South Carolina were dismissed because the substance found as a result of a consent search of his automobile turned out to be a non-controlled substance. In the Eastern District, he was charged on a criminal complaint and brought before Magistrate Judge Jones in Wilmington for a preliminary examination on a charge of violation of the Controlled Substances Act. At the conclusion of the preliminary examination, the District Court found no probable cause for the complaint and dismissed the charges against Mr. Flores-Duran. The next day, the government succeeded in obtaining an indictment against Mr. Flores-Duran and his brother, charging him again with violation of the Controlled Substances Act, conspiring with his brother to do that. The case proceeded through its normal process. A scheduling order was entered. I represented Mr. Flores-Duran in the District Court and filed a motion to compel some discovery because it had not been provided with discovery under Rule 16. In December of 2010, the District Court issued an order allowing in part and denying in part the discovery motion that it filed on Mr. Flores-Duran's behalf. The part of the motion that was allowed required the government to disclose Giglio and Brady material some 7 and 14 days before trial and disclosing all evidence the government intended to introduce in its case in chief. As the case got closer to trial, then Chief Judge Flanagan, now Judge Devers, now our Chief Judge, she routinely holds telephone conferences with counsel prior to trial to determine if there are any issues that relate to discovery, jury selection, things of that nature. We had a telephone conference and the case was scheduled for trial in March of 2010. Mr. Flores-Duran was only the defendant going to trial. His brother had not been apprehended. The two people in the indictment were he and his brother. During the telephone conference, we just talked about regular issues, witnesses, scheduled the matter for trial, and then right before trial, the government superseded the indictment, adding two defendants who had already been indicted some seven months before in a separate case. So combining those two cases, we just proceeded again, we got closer to trial, the government provided an enormous amount of discovery, what I would consider sort of late in the process. I filed a motion on Mr. Flores-Duran's behalf to exclude the evidence and or dismiss the charges for the discovery violations. When was that discovery provided? The discovery was provided approximately four days, five days before trial in April. Was that March? April 2000. April? April, yes sir. And the trial occurred in June? The trial occurred in June, yes sir. Yes sir. And why was that problematic? The problem of the denial of the motion to dismiss at that point in time, the problem was that as Mr. Flores-Duran's counsel at that point, I was ready for trial. The government had not added the 924C count yet. The superseding indictment came and added the 924C in April. The problem was actually in May when we got ready for trial, the government continued an investigation. I'm asking you what was the problem of producing the discovery. You're suggesting that they should have dismissed the case because they gave you the discovery in April when the trial was in June. And I'm asking you what's the problem with having that April discovery at that point, recognizing the trial was in June? Well, at that point. At that point it wasn't scheduled. I know it was postponed, but ultimately you had a couple of months. Sure. What's the problem there? Well, the problem was it allowed the government additional time to continue an investigation to gather more evidence against Mr. Flores-Duran, which the most compelling evidence I think the government was able to gather during the delay that resulted from the late disclosure to discovery was the location of Mr. Pickering, the owner of the trailer in Loures, South Carolina, who came to trial and had identified Mr. Flores-Duran as having rented that trailer. That's the trailer in which the government had produced evidence related to firearms and cocaine and currency, and they didn't have that evidence in March or April of 2010. The only reason they were able to obtain the evidence was that the delay caused by the late disclosure of discovery to allow an investigation. The gist of your argument is the government has, if not violated the law, played pretty close to the vest on all of this discovery sort of repeatedly. And ultimately that benefited the government because they were able to appreciably benefit their case by finding a new witness. Yes, sir. Right? Well, but the problem is, I think, that we break these things down, as Judge Niemeyer was doing, and you agreed, ultimately, to a delay each time we had this improper activity or late delay of discovery by the government, didn't you? I did. In April of 2010, that's when I first filed the motion to dismiss for the violation of the order. Judge Flanagan denied the motion. The district court denied the motion, and then the alternative continued. At that point in time, there were two other defendants who intended to proceed to trial who also, I agreed to the continuance. Yes, Your Honor. There was no finding by the trial judge that there was bad faith on the part of the government? No, Your Honor. But there was a lot of chat by the trial judge about, she thought the government was, there was, to be sure, no finding. But she thought the government should have been more forthcoming and done this quicker. Yes, Your Honor. She did, and the district court, in my opinion, became more dismayed in the May discovery violation when they had interviewed Mr. Pickering, located him, obtained his statement, had him identified, Mr. Flores-Duran, and didn't call me about it, but faxed information to my office on a Saturday. They didn't even tell me they had faxed the information. But probably that was because of the cumulative effect. She was irritated by the earlier things, and this was like the veritable straw. It just seemed to continue throughout the course of the case. The late disclosure by the government and the delay, Judge Bonsagiu identified, the delay benefited the government in ways that allowed them to obtain this information that they didn't have prior to the trial. But you could take that extra time and go get great witnesses for your client, if great witnesses were available, right? Right. It was an equal use of time. Yes, Your Honor. If great witnesses were available, I could have benefited from that time extension as well. That is the main issue that I would like to have discussed. There were some other issues I raised in the brief dealing with preservation of his motion to dismiss the 924C count as a venue issue. I think the government cited the appropriate law in that issue. I also raised the issue about the four-point enhancement Mr. Flores-Duran received as a result of being a leader organizer. Wouldn't that need five people? Need five? Yes, Your Honor. That's the only issues I'd like to discuss. Thank you. Thank you. Ms. Fritz? May it please the Court. I am Christine Fritz, and I represent the United States in this matter. And I think that one thing that was mentioned is that you need to break these issues down. There was one discovery deadline that was not met in April of 2011. It was missed by a day. The information was due on April 18th. The defendant received it on April 19th. Importantly, there was a violation, and we concede that there was a court-ordered deadline that was not met. But there has been no Brady or Giglio violation. There has been no statutory violation. What is the usual practice of the United States Attorney with respect to Giglio materials? How much before trial do you give it? I'm uncertain specifically how much before trial for Giglio. Generally, I know the practice of this attorney and other attorneys in the office is that Jenks-type material is disclosed the Thursday prior to trial. To the Monday trial? Yes. And there are occasions when that information is provided earlier. Of course, there are also situations where there's concern about witness safety. The district court can order you to produce it earlier? Yes, the district court may order that it be produced earlier, at least as respect to Brady and Giglio. In this case, the Jenks-type- When do you give Brady materials? Not until the Thursday before the trial? No. The discovery is handed over earlier than that. In fact, much of this discovery, for example, there were statements of proposed witnesses and debriefings included in that discovery packet. The defendant, as noted by the government in its omnibus response motion, the defendant had had those statements in a redacted form for months at that point. The bulk of that material that was disclosed also included telephone calls. And the defendant has identified absolutely no prejudice stemming from the disclosure of those materials themselves. The defendant had ample time to respond to the missed deadline. The court granted a continuance, which is an appropriate response to a missed deadline. Importantly, the court noted that the reasons for the delay, there was a misapprehension on the government's part of the Brady-Giglio deadline. She did not realize that the materials were due seven days prior to the trial. She did not realize that certain materials might become relevant during the course of the trial prep. The original prosecutor had thought that she may present evidence of a search of Salvador Flores-Durian's home, the defendant's brother's home. Ultimately, that information was not presented at the jury trial. Additionally, there was a debilitating storm. There was actually a tornado that went through Raleigh that weekend, and we were instructed not to go to court. There was no power in the building. The government had sent e-mails to defense counsel explaining the situation, and those went unanswered. Importantly, also— Was it Saturday morning? Was that the Saturday morning e-mail? I believe that there was also an e-mail. It may have been a Saturday morning e-mail. Don't you think somebody might have called? I think that— Maybe it would have had the same result, but you might have a cell phone. I think that the result may well have been the same if the fax to the office was not received. A telephone call to the office may well not be received as well. Additionally, government counsel had invited defense counsel April 15th to come over and review any of the materials that were in her files. This was a good-faith mistake followed by a prompt remedial steps. By Tuesday morning, the government had provided all of that information. Again, it was a day late, but all of that information had been provided. The e-mail correspondence between the government and all defense counsel indicated that she was not trying to create discovery issues. She was trying to avoid them. She could have avoided them by an open-file policy, right? The United States Attorney's Office could adopt such a policy. It certainly does in other districts. That could be adopted as a policy matter in the office. We do disclose— Why isn't that done in the Eastern District of North Carolina? I've got to sit on another panel this week. We're in the same kind of situations developing in the Eastern District of North Carolina. Why don't you have an open-file policy? I think that our office does disclose far more information than that which the law does require. We really do, in fact, have a fairly liberal discovery policy, specifically because we want to avoid these sorts of problems. Exactly. Maybe you can go back and ask whoever it is. You didn't try the case, right? No. Why there isn't an open-file policy? Almost every other district court in the circuit has one, and it would avoid these kinds of problems. Hopefully, yes. I will point out, however, that all of the defense attorneys were invited to come over to the U.S. Attorney's Office and review the government counsel's files. If a representation isn't made that this is an open-file, what does that tell them? They don't know what else is there, do they? I think that the use of the open file as a description for the policy is avoided because that might suggest that there is availability of attorney work product and other internal matters that would be part of the case file that we maintain, but certainly not part of the information that is disclosed to the defendant. I think, going back to the factors that are considered, the degree of prejudice. To the extent that there was prejudice here, it was an inability to properly review. Hypothetically, if there had been prejudice, it would have been the inability to properly review the information and provide a strategic defense response to the disclosure. That didn't happen here. Again, the defendant points to nothing that was disclosed that he was unable to meet with the additional time. That was the relief he sought in the alternative. Another thing that guided the district court's exercise of her discretion was whether a lesser sanction would remedy the prejudice and respond to the government's wrongdoing. The dismissal of an indictment is an extreme relief. In the one case I found out of the Fourth Circuit where that had been ordered by the district court, in Hastings that was reversed on appeal. Dismissing an indictment completely thwarts the public's interest in having its criminal laws enforced. Additionally, even the sanction of excluding testimony is often not imposed. There's an unpublished decision, United States v. Southern, which is a 2007 case. Again, the court has broad discretion here. The court looked at the missed deadline and responded appropriately. Can I ask you, taking it out of this case, I know these aren't the facts of this case because I accept the government's explanation that it just found out about this witness, the crucial witness over the weekend, and that you got a new prosecutor in that was looking for that witness. Suppose the government kept delaying the case, searching for the witness, and then ultimately did find the witness. Would you find that that was improper? I think that that's a hard hypothetical question. I don't like to ask easy ones. Well, I think that that would present a more problematic circumstance. I think that in this case there's no evidence. No, I think not in this case. If there were evidence of that, I do think various rights of the defendant would come into play, such as speedy trial, the Speedy Trial Act, and also speedy trial under the Sixth Amendment. Well, no, in my hypothetical, though, the defendant has agreed all along, not knowing that the government has its search out for the crucial witness and is just delaying the trial for that reason. It sounds like prosecutorial misconduct to me. That would certainly be very problematic, and I would hope to never have a case like that arise out of our district. But, again, in this case, which is different than your hypothetical, a new prosecutor was assigned to the case on May 16th. She did advise the defense counsel, all the defense attorneys, that she wanted to look for this landlord of the second Loris South Carolina trailer. She told them, I don't know if I'm going to find him, but I'm asking the agents to look for him. This individual was not found until Friday, May 20th. On the Saturday, once the government counsel had received the information, she faxed it over to the defendant. So she disclosed that information within one day, and then within one business day she had approached defense counsel wanting to confirm that he was aware of this new witness. Importantly, the defendant was not entitled to the identity or the substance of the witness's testimony here. I think that what's important to recall is that any Rule 16 obligation was met. The government counsel acted very promptly upon finding Mr. Pickering, and the court determined that these circumstances did not warrant any exclusion of Mr. Pickering's testimony, and asked defense counsel whether he wanted a continuance in order to meet this discovery. And in fact, my recollection is that the defense had a witness purporting to provide an alibi for the date on which the trailer was rented. So the defendant did take strategic action to respond to that, but we submit that that was not a discovery violation. And I would ask the court, in the defendant's brief, there's an effort to combine different issues. Is it your position that there was only one discovery failure, and that's the one day delay in April? Yes, that is our position. We believe that that is what the record supports. And although the late discovered witness certainly caused inconveniences and necessitated a postponement of the trial date, that wasn't a discovery failing on our part. We did not violate any rules, statutes, or the Constitution. Now, in addition, the defendant raises various other issues in his brief. I think he has conceded the venue issue. The remaining evidence in the trial was certainly more than sufficient to establish this defendant as a leader or organizer of this criminal enterprise. There were certainly more than five people involved, and it was otherwise extensive given the number of people involved, the number of stash houses, the amount of time that this was going on, the amount of individuals who were supplied. What's the total amount of cocaine involved? It's pretty large, wasn't it? It is pretty large, and I'm not certain what the total amount was involved. I know there were significant amounts of cocaine being trafficked out. Somebody referred to over 100 kilograms. Does that sound right? That may well be the case. I know that there were witnesses who spoke about seeing significant amounts of cocaine, for example, 20 at a time, bringing up 20 at a time from Georgia, there being that amount in the false bottom sink of the Myrtle Beach trailer. The defendant, when speaking with Mr. Castaneda, boasted of the amount that was weekly being trafficked through what he called the office, or the Ash, North Carolina trailer. There's also the testimony of Mr. Rivera, who estimated that I think he prepared approximately six kilograms of cocaine weekly during the approximately six months that he was living at the Loris I and Loris II trailers. There was a great deal of narcotics being trafficked in this situation. Anything else? No. We ask that you affirm the judgment of the district court. Thank you. Mr. Osberg? May it please the court, just a few brief issues. On the discovery issue, prior to the April disclosure by the government in this particular case, the prosecutor had provided, I'd say probably somewhere between 100 and 125 pages of redacted discovery, blanking out every name in every report of the person making the statement, and any other name other than Mr. Flores Duran that was mentioned in the report being blacked out. Do you agree that the only discovery failure was the one day late in April, one day late production? It was more than a day late, Your Honor. She represented that it was April 19th as opposed to 18th or 18th as opposed to 17th? She was at least seven days late on disclosing information she intended to use in her case in chief. What disclosure was that? The April disclosure. When was it due? There was information due 14 days before trial and seven days before trial. The Giglio information was due seven days before trial. She was a day late or so on that. She was at least seven to eight days late on the other information. It means it all came together. It all came together, yes, sir. And in my response, in my motion I filed at the district court level dealing with the discovery issue, was I understand they had a storm, and I understand things do happen. This is with respect to the disclosure of the witness Pickering? Disclosure in April. April, part of the reason for the explained delay was that they had the storm in Raleigh. They had other problems. And in my motion, I understand that happens. I recognize it happens. But the government's decision to delay their disclosure until the last minute, which is routine in the Eastern District, that's the problem that arises when you wait that late.  And the government gives the discovery on that deadline date. You can't criticize that, can you? You can't criticize it if they meet their obligations. Right, if they meet it, right. But they didn't meet it. No, they didn't meet it here, and they concede that. They didn't meet it, and in fact, I'll say there's some frustration, and I think I expressed it during the hearing at the district court level about this discovery issue, which this is a repeat offense by the government. The order is entered by the court requiring disclosure at a certain date, and the government simply ignores it. And their explanation for ignoring it was, I missed it, so what? There's no prejudice. And it just happens again and again. And I don't see how any result could have occurred at the April hearing date about continuing the trial with three defendants who were provided with a massive amount of discovery that is basically all new because the prior discovery that's provided was redacted to an extreme level. Redacted in the sense that you couldn't even surmise who was making the statement, and other than Cocaine and Flores, that's all the statements were. So I don't know what result the government. The discovery that was produced in April, did it have unredacted? It didn't. It didn't. That was right before the commencement of the trial. And I think one of my comments to the district court is, I don't know what other intended effect the government's late disclosure in that process could have other than compelling the defendant to ask for additional time. I spoke with the other counsel. It was Easter weekend, actually. Oh, there's also the possibility of excluding evidence. And we asked for some remedy to that effect, and the district court denied it but afforded us the opportunity to continue the case. Frustration as a practitioner in the Eastern District. If there's no evidence of bad faith, it would seem to me that the interest of the court is to give you enough time to prepare but to allow the government on behalf of the public to prosecute the case, and I think that's probably where the district judge came out on this, giving you enough time to respond. Yes, I agree. I agree. Then that's what she did. This is not the right case to slap them down for that kind of practice, is it? I think it is, Your Honor. I think it is. That was your softball question. All right, we'll come down and greet counsel. Mr. Hosford, you were appointed by the court, and I'd like to recognize that service. Thank you very much. We'll come down and greet counsel. We'll see you at the next case.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Henry F. Floyd